UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YAIR EDUARDO GRAJEDA VELAZQUEZ,<br><br>     Petitioner,<br><br>  v.<br><br>CAMMILLA WAMSLEY ET AL.,<br><br>     Respondents. | CASE NO. 2:25-cv-02641-JHC<br><br>ORDER |

# I
## INTRODUCTION

This matter comes before the Court on Petitioner Yair Eduardo Grajeda Velazquez's Petition for Writ of Habeas Corpus. Dkt. # 1. The Court has reviewed the materials filed in support of and in opposition to the petition, the record, and the governing law. Being fully advised, for the reasons below, the Court GRANTS the Petition.

# II
## BACKGROUND

Petitioner is a 19-year-old, non-U.S. citizen. Dkt. # 1 at 5. It is undisputed that Petitioner and his family arrived in the United States via the Brownsville, Texas port of entry in May 2024. Dkt. # 6 at 1; *see also* Dkt. # 1 at 2. Upon arrival, Petitioner was charged with inadmissibility pursuant to § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA) and issued a

ORDER - 1

Notice to Appear before an immigration judge on December 3, 2025, in Seattle, Washington. Dkt. # 6 at 1–2; Dkt. # 7-1 at 2.  Petitioner was then released into the United States with instructions to report to a local ICE Enforcement and Removal Operations (ERO) office, among other conditions.  *Id*. at 2; *see also* Dkt. # 1 at 5.

The Government contends that on or about January 30, 2025, Petitioner reported for an ERO check-in and was enrolled in the Alternatives to Detention (ATD) program for continued monitoring and reporting purposes.  Dkt. # 6 at 2.  They also state that on May 27, 2025, Petitioner applied for relief with the immigration court.  *Id*.  Petitioner confirms that after arrival, he was placed in the Intensive Supervision Appearance Program (ISAP), which required him to regularly upload certain biometric information into an app.  Dkt. # 1 at 2.  He also asserts, and the Government does not dispute, that on December 3, 2025, Petitioner attended his scheduled hearing before an immigration judge in Seattle, at which point a final merits hearing for his case was scheduled for October 15, 2029.  *Id*.[1]

The parties agree that after the December 3 hearing, Petitioner was requested to appear before the Yakima ICE office for an ERO check-in.  *Id*.; Dkt. # 6 at 2.  On December 15, 2025, Petitioner reported for this check-in.  *Id*.  He was then arrested and taken into custody by ICE.  *Id*.  The Government contends that Petitioner was detained at the check-in "due to his history of ATD violations."  Dkt. # 6 at 2.  In support of this claim, they allege that between June 12 and November 27, 2025, Petitioner missed seven biometric check-ins, in violation of his ATD/ISAP enrollment.  *Id*.

---

[1] The Petition also suggests that Petitioner intended to "seek asylum" and at some point during or after entry, he did "request" asylum.  *See* Dkt. # 1 at 5.  The present record, however, is silent as to what this "request" consisted of, and what the status of his asylum application is more generally.  *See generally* Dkt.

ORDER - 2

Petitioner affirms that when he was taken into custody, he was told that his arrest was due to his failure to comply with the ISAP program. Dkt. # 1 at 2. Petitioner's account, however, diverges from that of the Government. According to Petitioner, although there were times that he failed to report his biometrics, such failures were due to technical issues with the ISAP app. *Id*.; *see also* Dkt. # 9 at 2. He also contends that on each such occasion, he "sent messages through the application's messaging function" or "called a local number of an ISAP officer" to report the malfunction." Dkt. # 1 at 2. While Petitioner has provided no direct evidence of these communications, in his traverse, he notes that the Government has "cut off access to communication records which may have established compliance." Dkt. # 9 at 5. The Government has provided no information that would confirm or rebut these allegations. *See generally* Dkt. # 6.

Petitioner also asserts that before being re-detained, the Government did not provide him with a warrant, a hearing before a neutral decisionmaker, a written notice explaining the basis for his re-detention, or any other justification or evidence that would support his re-detention (besides the alleged ATD biometric violations that were communicated at the time of re-detention). *See* Dkt. # 1 at 2, 6. The Government does not contest this assertion. *See generally* Dkt. # 6.

After his arrest at the Yakima ICE office, Petitioner was transferred to the Northwest ICE Processing Center (NWICP) in Tacoma, Washington, where he remains today. *Id*. at 2; *see also* Dkt. # 1 at 6. Petitioner then filed this Petition for Writ of Habeas Corpus, arguing that his re-detention without written notice and a pre-deprivation hearing before a neutral decisionmaker violates his constitutional right to due process under the Fifth Amendment. *See* Dkt. # 1 at 9. Petitioner also filed a Motion for a Temporary Restraining Order, requesting that the Court enjoin Respondents and all of their officers, agents, servants, employees, attorneys, and persons

acting on their behalf from transferring or deporting Petitioner while his habeas petition is pending.  *See* Dkt. # 2 at 4.  The Court granted Petitioner's Motion (Dkt. # 2) on December 23, 2025, thereby preserving the status quo while his habeas petition is pending.  *See* Dkt. # 5.

### III
### DISCUSSION

A.    Legal Standards

    1.    Habeas Relief

Federal district courts have the authority to grant a writ of habeas corpus.  28 U.S.C. § 2241(a).  But this relief can be extended only under certain conditions.  *See* 28 U.S.C. § 2241(c).  One such condition is if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]"  *Id.*  "The [habeas] petitioner carries the burden of proving by a preponderance of the evidence that [they are] entitled to habeas relief."  *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

    2.    Due Process

The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. V.  It "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (collecting cases).

The traditional test for evaluating due process claims established by *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context."  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir.

2022).[2] "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether a governmental action violates "the specific dictates of due process generally requires consideration of three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

B.    Analysis

Petitioner contends that he is entitled to habeas relief because his re-detention violates the Due Process Clause of the Fifth Amendment. *See* Dkt. # 1 at 9. Respondents do not directly address Petitioner's due process rights nor attempt to engage with the *Mathews* factors. *See generally* Dkt. # 6. Instead, Respondents contend that Petitioner is lawfully detained under 8 U.S.C. § 1225(b)(1) and, contrary to the recent decisions of other district courts, C.F.R. § 1236.1(c)(9) permits Respondents to revoke the release of noncitizens like Petitioner at any time. *Id*. For the reasons below, the Court GRANTS the Petition.

---

[2] In *Rodriguez Diaz*, the Ninth Circuit applied the *Mathews* test, but "assume[d] without deciding" that *Mathews* applies in the context of immigration detention. 53 F.4th at 1207. In applying the *Mathews* test, the court recognized that other circuits have applied the *Mathews* test to due process challenges to immigration proceedings. *Id.* at 1206. The Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings." *Id.* And the Supreme Court has applied *Mathews* in a due process challenge to an immigration exclusion hearing. *Id.*; *see Landon v. Plasencia,* 459 U.S. 21 (1982). More recently, Washington district courts have repeatedly applied *Mathews* to evaluate noncitizens' due process challenges to re-detention decisions. *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 (W.D. Wash. 2025) (applying *Mathews* to evaluate the constitutionality of the petitioner's re-detention and collecting cases that employ this test in the context of immigration detention); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1135 (W.D. Wash. 2025) (applying *Mathews* to evaluate the constitutionality of the petitioner's re-detention); *Kumar v. Wamsley*, 2025 WL 2677089, *2–3 (W.D. Wash. Sept. 17, 2025) (same); *Ledesma Gonzalez v. Bostock*, 2025 WL 2841574, *7–8 (W.D. Wash. Oct. 7, 2025) (same); *Tzafir v. Bondi*, 2025 WL 3724708, *2–4 (W.D. Wash. Dec. 24, 2025) (same). The Court likewise applies the *Mathews* test here.

ORDER - 5

1.   Private Interest

The first *Mathews* factor considers "the private interest that will be affected by the official action[.]" *Mathews*, 424 U.S. at 335. Freedom from detention "is the most elemental" of private interests affected by official action. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). So it is unsurprising that even conditional release "is valuable and must be seen as within the protection of the [Due Process Clause]." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *see also Bd. of Pardons v. Allen*, 482 U.S. 369, 377–81 (1987) (recognizing that governmental action can create a liberty interest protected by the Due Process Clause); *Johnson v. Williford*, 682 F.2d 868, 873 (9th Cir. 1982) (same).

Here, Petitioner has an unquestioned liberty interest in being free from detention. Such interest was only strengthened by the Government's decision to release him from immigration custody in May 2024. Between May 2024 and December 15, 2025, Petitioner lived in the United States without incident. During this time, he resided in the community and complied with all the conditions of release, apart from the biometric check-ins discussed in more detail below. His release thus allowed him to "gain[ ] a foothold in the United States" and "develop ties in this country," thereby strengthening his constitutional right to due process. *Pablo Sequen v. Kaiser*, 800 F. Supp. 3d 998, 1009 (N.D. Cal. 2025) (first quoting *Kaplan v. Tod*, 267 U.S. 228, 230 (1925); and then quoting *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982)) (cleaned up). In revoking Petitioner's release, the Government has undeniably inflicted a "grievous loss" of Petitioner's liberty, thereby depriving him of a core private interest protected by the Due Process Clause. *See Morrissey*, 408 U.S. 471 at 482.

ORDER - 6

Although the Government asserts that it has the authority to revoke releases and detain noncitizens during removal proceedings, *see* Dkt. # 6 at 3–5, such arguments have no bearing on the due process issue before the Court. While the Government may revoke releases and detain noncitizens during removal proceedings, noncitizens still have a constitutionally protected liberty interest and must be afforded due process protections before they are detained. *See Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]"). Accordingly, the first *Mathews* factor favors Petitioner.

    2.    Risk of Erroneous Deprivation of Interest Through Procedures Used

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335.

Here, the risk of an erroneous deprivation of Petitioner's liberty interest is high. Because more than a year and a half passed between Petitioner's release and his subsequent re-detention, there is a significant risk that Petitioner's liberty interests will be erroneously deprived if he is not afforded the essential elements of due process before re-detention—notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333, 348 (internal citation and quotation marks omitted); *see also Valdez v. Joyce*, 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025) ("Petitioner's re-detention without any change in circumstances or procedure establishes a high risk of erroneous deprivation of his protected liberty interest."); *E.A. T.-B.*, 795 F. Supp. 3d at 1323 (collecting cases on erroneous deprivation in the context of immigration re-detention).

The Court also finds that the probable value of additional or substitute procedural safeguards is high, particularly given the facts here. While the Court acknowledges that the Government's revocation of Petitioner's release was allegedly premised on his missed biometric check-ins, it notes that the Government has provided no evidence to rebut Petitioner's claims that there were technical failures with the app or that he tried to communicate these issues with ISAP officers.[3] *See generally* Dkt. # 6. It also notes that if Petitioner had been given adequate notice or a meaningful opportunity to be heard prior to his re-detention, he would have had the opportunity to raise his concerns with the app and present any relevant evidence before suffering a deprivation of his liberty. As the Government's basis for revocation of release was Petitioner's alleged biometric violations, the Court is convinced that additional procedures would serve to reduce the risk of an erroneous deprivation here.

The Government's sole argument—that there is no statutory requirement for a pre-detention hearing and so the other district courts' decisions are wrong—fails to grapple with Petitioner's actual due process claim, as well as the broader due process arguments advanced by the other district courts on this topic. The Court thus finds that the second *Mathews* factor favors Petitioner.

3.    Government's Interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

---

[3] In making this point, the Court is not suggesting that the Government bears the burden of proof—it is simply acknowledging that Petitioner has made a plausible allegation, and it is the Government, not Petitioner, who currently controls the evidence that would either prove or disprove Petitioner's claim.

ORDER - 8

The Government fails to assert any specific interest that would counsel against the Court finding a due process violation here. *See generally* Dkt. # 6. Yet the Court acknowledges that the Government has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690.

But although the Court acknowledges that the Government has some interests, it also notes that "[i]n immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). Thus, "the government's interest in detaining [a] petitioner without a hearing is 'low.'" *Id.* (quoting *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)); *see also E.A. T.-B.*, 795 F. Supp. 3d at 1323. This is especially true here, as the Government already determined that Petitioner does not pose a danger to the community, leading to his release in May 2024. Although the Court acknowledges that the Government's calculus may have changed following Petitioner's alleged biometric violations, it also notes that Petitioner appeared for his scheduled immigration hearing on December 3, 2025, i.e., after all seven biometric violations occurred, and the immigration judge set the case for a final merits hearing on October 15, 2029 and did not order his re-detention. It also concludes that because Petitioner was already scheduled to appear before an immigration court, and in fact did appear, the Government's purported interest in minimizing costs or ensuring the appearance of noncitizens at immigration proceedings is nearly nonexistent here. So this *Mathews* factor also favors Petitioner.

In sum, all three *Mathews* factors favor Petitioner. The Government's re-detention of Petitioner with insufficient notice and no opportunity to be heard violates his constitutional right to due process under the Fifth Amendment. As a result, he has proven by a preponderance of the

ORDER - 9

evidence that he "is in custody in violation of the Constitution or laws or treaties of the United States" and thus is entitled to habeas relief. 28 U.S.C. § 2241(c).

## IV
## CONCLUSION

For these reasons, the Court:

(1) GRANTS the Petition for Writ of Habeas Corpus (Dkt. # 1).

(2) ORDERS that Petitioner must be released from custody immediately on the same conditions of release previously imposed before his arrest in December 2025.[4] Respondents and their respective officers, agents, employees, attorneys, and other persons acting on their behalf are prohibited from re-detaining Petitioner unless and until he is provided with adequate notice and a hearing before an immigration court to determine whether re-detention is appropriate.

(3) DIRECTS the clerk to send uncertified copies of this Order to all counsel of record.

Dated this 12th day of January, 2026.

*John H. Chun*
John H. Chun
United States District Judge

---

[4] *See Y.M.M. v. Wamsley*, 2025 WL 3101782, at *3 (W.D. Wash. Nov. 6, 2025).

ORDER - 10